861 So.2d 1227 (2003)
BREED TECHNOLOGIES, INC., Appellant,
v.
ALLIEDSIGNAL INC., Appellee.
No. 2D02-5531.
District Court of Appeal of Florida, Second District.
December 12, 2003.
*1228 Donald B. Ayer, Geoffrey S. Stewart, Gregory M. Shumaker, and Edward K.M. Bilich of Jones Day, Washington, D.C. and John W. Frost, II of Frost, Tamayo, Sessums & Aranda, P.A., Bartow, for Appellant.
Eugene F. Assaf, Christopher Landau, Craig S. Primis, and Brett H. McGurk of Kirkland & Ellis, Washington, D.C. and Benjamin H. Hill, III and Dennis P. Waggoner of Hill, Ward & Henderson P.A., Tampa, for Appellee.
SILBERMAN, Judge.
Breed Technologies, Inc., appeals the trial court's order granting a motion to transfer venue from Polk County, Florida. Because Polk County is a proper venue for this litigation, we reverse.
In August 1999, Breed filed suit in Polk County against AlliedSignal Inc.,[1] a foreign *1229 corporation, alleging fraud and misrepresentation. Later, Breed filed an amended complaint asserting additional theories of recovery.
AlliedSignal filed a motion to transfer venue to Hillsborough County pursuant to section 47.051, Florida Statutes (1999). It argued that, as a foreign corporation, any action against it could only "be brought in a county where such corporation has an agent or other representative, where the cause of action accrued, or where the property in litigation is located." § 47.051. AlliedSignal asserted that none of the statutory bases were met for venue to exist in Polk County and, because it had representatives in Hillsborough County, that venue had to be transferred to Hillsborough County. Breed contended that AlliedSignal had agents or other representatives in Polk County and, pursuant to section 47.051 and the decision in Piper Aircraft Corp. v. Schwendemann, 564 So.2d 546 (Fla. 3d DCA 1990), that Polk County was a proper venue.
The pertinent facts relating to venue are largely undisputed by the parties. AlliedSignal did not have employees, offices, entities, subsidiaries, or real estate in Polk County, and no one in Polk County was authorized to bind AlliedSignal or to accept service on its behalf. However, AlliedSignal had contractual relationships with four businesses located in Polk County. AlliedSignal appointed two businesses as non-exclusive authorized sales and service centers for its products, and it appointed a third business as a non-exclusive authorized service center for its products (these three businesses will be referred to as the "service centers"). AlliedSignal appointed a fourth business, Cypress Aviation, Inc., as a non-exclusive authorized dealer to purchase, sell, install, and support the full line of products as published annually in the dealer price catalog.
The contracts authorized all four businesses to sell, install, and repair AlliedSignal products, but they were not prohibited from selling, installing, and repairing the products of others. The contracts for the service centers were substantially similar and specified that the service centers were independent contractors and not AlliedSignal's agents or legal representatives. The contracts stated that the service centers were (1) required to promote the sale of AlliedSignal products; (2) responsible to solicit orders and stock products for AlliedSignal and to participate in cooperative advertising programs arranged by AlliedSignal; (3) authorized by AlliedSignal to use its trade name and trademark in Polk County in various ways, including on signage, displays, letterheads, business cards, price lists, catalogs, advertising, telephone listings, and vehicles; and (4) required to adhere to AlliedSignal's code of conduct, which outlined what was expected of employees and others who represented AlliedSignal.
The dealer contract was more extensive than the service center contracts and arguably imposed greater obligations on Cypress Aviation than the service center contracts imposed on the service centers. Among other things, Cypress Aviation was required to (1) act in AlliedSignal's "best interest, selling and supporting its products and systems in a professional and responsive manner to all user/operators"; (2) prominently identify itself as an authorized dealer; (3) own or lease and maintain facilities satisfactory to AlliedSignal; (4) maintain a current sales knowledge on *1230 product capabilities in order to competently discuss and demonstrate the products to prospective buyers; (5) employ personnel who are trained and technically qualified to install and service products to AlliedSignal's satisfaction; (6) maintain an adequate inventory of spare parts and, in performing service, to use only approved parts; (7) actively promote sales of AlliedSignal products and maintain prominent displays of AlliedSignal literature; (8) meet or exceed sales quotas established by AlliedSignal; (9) register warranties for products installed for customers; and (10) provide warranty service by performing maintenance, repairs, and modifications in accordance with the dealer's rating certification and by performing repairs and modifications as authorized by AlliedSignal. The contract described the relationship between AlliedSignal and Cypress Aviation as that of independent contractors, and Cypress Aviation was not authorized to bind AlliedSignal in any way.
After considering the nature of the relationships between AlliedSignal and the four Polk County businesses, the trial court concluded that the businesses were not the agents or representatives of AlliedSignal and that venue was not proper in Polk County. On appeal, the applicable standard of review requires that we review the trial court's factual decisions "to determine whether they are supported by competent, substantial evidence or whether they are clearly erroneous. The trial court's legal conclusions are reviewed de novo." PricewaterhouseCoopers LLP v. Cedar Res., Inc., 761 So.2d 1131, 1133 (Fla. 2d DCA 1999) (citations omitted). Moreover, it is the plaintiff's prerogative to select the venue, and the plaintiff's selection will not be disturbed if it is one of the alternatives provided by the statute. Nissan N. Am., Inc. v. Vitale, 802 So.2d 465, 467 (Fla. 2d DCA 2001); Premier Cruise Lines, Ltd. v. Gavrilis, 554 So.2d 659, 660 (Fla. 3d DCA 1990). It is the defendant's burden to demonstrate that the plaintiff's venue selection was improper. Eth-Wha, Inc. v. Blankenship, 483 So.2d 872, 873 (Fla. 2d DCA 1986); Piper Aircraft Corp. v. Schwendemann, 564 So.2d 546, 547 (Fla. 3d DCA 1990).
Breed urges this court to follow the rationale used by the Third District in Piper, which addressed a situation similar to the one presented here. In Piper, lawsuits had been filed in Dade County against Piper and asserted claims for individuals who were killed or injured in an aircraft crash. Piper was the manufacturer of the aircraft, and the crash occurred in Germany. When Piper challenged venue, the plaintiffs responded by establishing that Piper had contractual agreements with two separate Dade County entities. One entity sold and serviced airplane parts, and the other was a parts distributor. Piper, 564 So.2d at 547.
Piper argued that the terms "agent" and "representative," as used in the venue statute, were synonymous and that because Piper did not have an agent in Dade County, it did not have a representative there. The trial court disagreed and concluded that the parts distributor and service center were representatives of Piper, establishing Dade County as a proper venue. Id. On appeal, the Third District agreed with the trial court and stated that there was sufficient evidence to support the denial of Piper's motion to transfer venue. Id. at 548.
In Piper, the Third District applied principles of statutory construction and concluded that for the purposes of the venue statute, the terms "agent" and "representative" were not synonymous and had different meanings. Id. at 547-48. The court stated that "[t]he nature of the relationship that the plaintiff must establish as *1231 existing between Piper and its `representative' for venue purposes is far different than the relationship that the plaintiff would have to demonstrate in order to hold Piper financially liable in tort for the actions of one of its `agents.'" Id. at 548.
In the present case, the trial court was aware of the Piper decision and acknowledged that the facts here were very similar to the facts in Piper. However, the trial court concluded that Piper was wrongly decided and that the Third District's interpretation of the venue statute was not the law. The trial court cited a Texas case, Ford Motor Co. v. Miles, 967 S.W.2d 377 (Tex.1998), which concluded that an automobile dealer's presence in the county where suit was filed was insufficient to support venue in a lawsuit against an automobile manufacturer. The trial court also cited PricewaterhouseCoopers and Magical Cruise Co. v. Lohinski, 829 So.2d 925 (Fla. 3d DCA 2002), as support for its conclusion that the Piper decision was incorrect.
Breed argues that even if the trial court believed that Piper was incorrect in its analysis of the law, the trial court was obligated to follow Piper. We agree. Neither the cases that the trial court cited nor any cases that the parties cited provided authority for the trial court to disregard Piper. This court has previously stated that "a trial court in this district is obliged to follow the precedents of other district courts of appeal absent a controlling precedent of this court or the supreme court." Chapman v. Pinellas County, 423 So.2d 578, 580 (Fla. 2d DCA 1982); see also In re N.Z.B., 779 So.2d 508, 510 (Fla. 2d DCA 2000). As a result, we agree that the trial court erred in disregarding Piper based on its view that Piper was wrongly decided and therefore not binding on it.
AlliedSignal argues that even if the trial court erred by not following Piper, the trial court's analysis was correct and, because this court is not bound by Piper, we should reject the Piper rationale. Although the trial court cited several cases in support of its decision, the three cases that it and AlliedSignal most heavily relied on do not persuade us that Breed's venue selection was improper or that Piper is incorrect.
In Ford Motor Co. v. Miles, 967 S.W.2d 377, 380 (Tex.1998), the court considered whether the presence of a Ford dealership in Rusk County was sufficient to support venue against Ford Motor Company, a foreign corporation with its regional headquarters and its principal place of business located in a different county. The court noted that under Texas law, "`venue against a corporation may be predicated upon the presence in a county of either an agencya more or less regular and permanent business operationor a representative with broad powers to act for the corporation.'" Id. (quoting Ruiz v. Conoco, Inc., 868 S.W.2d 752, 759 (Tex.1993)). The court added that "[p]ossession of broad power and discretion to act for the corporation is essential for both an agency and a representative." Id. The court concluded that the presence of the dealership was insufficient for venue purposes because the dealership did not have broad power to act for Ford Motor Company. Id. at 381-82.
PricewaterhouseCoopers LLP v. Cedar Resources Inc., 761 So.2d 1131, 1134 (Fla. 2d DCA 1999), involved a question of where the cause of action accrued, not whether the defendant had an agent or representative in the county where suit was filed. In Magical Cruise Co. v. Lohinski, 829 So.2d 925 (Fla. 3d DCA 2002), Disney Cruise Lines was sued in Dade County. It filed a motion to dismiss for improper venue and filed affidavits asserting that it had no offices or agents in Dade *1232 County. The court noted that the plaintiff failed to present affidavits or other sworn proof to rebut Disney's affidavits. Id. at 926-27. Apart from the failure of proof, the court stated that no authority supported the plaintiff's argument "that venue is proper in a county where an agent only travels to the county to conduct business but does not reside in, have an office in or operate out of such a county." Id. at 928.
Although Ford Motor Co. provides some support for AlliedSignal's position, we are persuaded that the decision interprets the term "representative" more narrowly than we believe to be correct. The other cases cited by the trial court and AlliedSignal do not address the particular situation presented here. Other than Piper, the parties have not cited and we have not located any Florida case dealing specifically with the issue of what type of representative relationship is sufficient for venue purposes. Based on the circumstances of this case, we conclude that the Piper analysis is correct and that Breed's choice of venue was proper.
Black's Law Dictionary 1302 (6th ed.1990), defines "representative" as "[a] person or thing that represents, or stands for, a number or class of persons or things, or is equivalent to, another person or thing." Black's Law Dictionary recognizes that when one represents another in a special capacity as an agent, the term "representative" may be interchangeable with the term "agent." However, as noted in Piper, the terms "agent" and "representative" are not synonymous. Piper, 564 So.2d at 547.
Although the dealer contract between AlliedSignal and Cypress Aviation stated that Cypress Aviation was an independent contractor and that it could not obligate AlliedSignal in any way, descriptive labels employed in agreements are not determinative as to the actual legal relationship between the parties. See Parker v. Domino's Pizza, Inc., 629 So.2d 1026, 1027 (Fla. 4th DCA 1993); Nazworth v. Swire Fla., Inc., 486 So.2d 637, 638 (Fla. 1st DCA 1986).
The substantial and detailed obligations imposed on Cypress Aviation pursuant to its dealer contract with AlliedSignal are significant to our decision. Cypress Aviation was required to act in AlliedSignal's best interest; it had to prominently identify itself as AlliedSignal's authorized dealer; its facilities had to be satisfactory to AlliedSignal; it had to retain personnel specifically trained and qualified in AlliedSignal's products, to AlliedSignal's satisfaction; it had to actively promote sales of AlliedSignal's products and meet the sales quotas established by AlliedSignal; and it was required to provide warranty service by performing maintenance, repairs, and modifications as authorized by AlliedSignal. Based on the nature of the relationship between AlliedSignal and Cypress Aviation, we conclude that Cypress Aviation was a representative of AlliedSignal in Polk County for purposes of venue.
Concerning the service center contracts, they imposed different obligations on the service centers than the dealer contract imposed on Cypress Aviation. There was some overlap in the agreements, such as the solicitation or promotion of sales on behalf of AlliedSignal. However, because we have determined that Cypress Aviation was AlliedSignal's representative for the purpose of establishing venue in Polk County, we need not address whether we would reach the same result if we were considering only the relationship between AlliedSignal and the service centers. We also note that we do not have before us any issue of venue based on forum non conveniens. See § 47.122, Fla. Stat. (1999). Finally, we reject without discussion *1233 Breed's alternative argument that the cause of action accrued in Polk County.
Accordingly, because Polk County is a proper venue for this litigation, we reverse the order granting AlliedSignal's motion to transfer venue and remand for further proceedings consistent with this opinion.
SALCINES and KELLY, JJ., Concur.
NOTES
[1] We note that after suit was filed, Breed sought bankruptcy protection and a trustee was empowered to prosecute Breed's claims against AlliedSignal. In addition, AlliedSignal merged with Honeywell, Inc., and, as a result of the merger, AlliedSignal adopted the Honeywell name. This opinion will refer to the appellant as Breed and to the appellee as AlliedSignal. We also note that the record uses both the Honeywell and AlliedSignal names; in order to avoid confusion, this opinion will only use the name "AlliedSignal" when referring to either company.